IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM ROYSTON JOHNSON, et al.          :

           v.          :          CIVIL NO.  CCB-18-45

RAJWINDER SINGH, et al.          :

## REPORT AND RECOMMENDATION

This matter was referred to me for a Report and Recommendation regarding damages following the Court's adoption of the Report and Recommendation for the Motion for Default Judgment (ECF 44). A hearing was conducted by the Court on July 27, 2020 (ECF 49). For the reasons set forth below, I recommend the Court AWARD damages in favor of each Plaintiff as set forth below jointly and severally against both Defendants.

### Facts

On July 15, 2014, Plaintiff Johnson was operating a vehicle southbound on Interstate 95 in Baltimore city. Plaintiff West was an occupant in the vehicle. Johnson was stopped at the toll plaza at the Fort McHenry tunnel and was rear-ended by a truck operated by Defendant Singh and owned by Batth Trucking. Both Plaintiffs sustained injuries in the collision. ECF 2.

### Discussion

In reviewing motions for default judgment, the court accepts the plaintiff's well-pleaded allegations as to liability as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); s*ee also* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *Ryan,* 253 F.3d at 780 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.") (internal citation omitted)).

If the facts alleged in the complaint establish liability, then the court must determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780–81. The court may make a determination

as to the amount of damages without a hearing if the record contains sufficient evidence to support the award. *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) (noting that "in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing"); *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F.Supp.2d 680, 684 (D. Md. 2013) (finding that the court need not conduct an evidentiary hearing to determine damages and "may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum").

The remaining issue is one of damages. The Court cannot assess damages from the Complaint which alleges "damages in excess of $75,000.00".  Therefore, consistent with the authority set forth above, I conducted a hearing on damages on July 27, 2020. ECF 49.

The Defendants remained in default and did not appear for the scheduled hearing. The Court is confident they received notice of the hearing. The Court received inquiries from counsel out of state who are not admitted to practice in this District, requesting a delay of proceedings. The Court advised counsel that it would respond to motions if appropriate counsel entered an appearance. No counsel entered any appearance on behalf of either Defendant and Defendant Singh did not appear *pro se*.

At the hearing, Plaintiffs' counsel called both Plaintiffs to testify. I incorporate the recording of the hearing as part of this Report and Recommendation. Both Plaintiffs testified about the factual basis of the accident. The testimony was consistent and credible. Both Plaintiffs testified regarding their individual injuries, treatment and diagnoses. Again, I find that their testimony was credible and was supported with the extensive medical records provided by Plaintiffs and accepted by the Court as Plaintiffs' Exhibit 1 in support of the hearing on damages. In addition to the testimony of each Plaintiff and their medical records, Plaintiffs also offered the deposition of Dr. Franchetti. Dr. Franchetti is an orthopedic surgeon, who is Board Certified and

has practiced orthopedic surgery in Maryland since 1987. Dr. Franchetti was properly qualified and offered as an expert witness in the diagnosis and treatment of orthopedic injuries as well as an expert capable of rendering an opinion on the cost of procedures used to treat orthopedic injuries. Plaintiffs offered the video deposition of Dr. Franchetti which I accepted as Plaintiffs' Exhibit 2 in support of the hearing on damages.

First and foremost, I find that Dr. Franchetti's testimony regarding Plaintiffs' injuries and treatment was credible and well supported by the medical records. In addition to reviewing the treatment records, Dr. Franchetti conducted his own physical examination of each of the Plaintiffs in 2017. He conducted a follow up Telemedicine review of the Plaintiffs on the date of his deposition, July 7, 2020. I incorporate Dr. Franchetti's deposition testimony as a vital part of this Report and Recommendation.

As to each of the Plaintiffs, Dr. Franchetti reviewed the past treatment and medical bills incurred. He testified that the treatment was consistent with the injuries resulting from the motor vehicle accident of July 15, 2014. He found that the expenses incurred, the medical bills for their treatment was fair and reasonable.  He further found that the treatment and bills incurred were causally related to the accident subject of this litigation. The Court agrees.

As to Plaintiff Jennifer West, Dr. Franchetti's diagnosis was consistent with the diagnosis of the treating physicians set forth in the medical records. Ms. West suffered from chronic lumbosacral strain with disc herniation at L4-L5 and annular tear of L3-L4. Dr. Franchetti opined that he also reviewed the photographs of the accident scene (Exh. 1) and the injuries to Ms. West were a direct result of the accident of July 15, 2014. Although Ms. West suffered from other injuries, including neck sprain, the lumbosacral sprain was permanent. Dr. Franchetti testified that Ms. West would suffer from flare-ups and episodic lumbosacral pain as a result of the accident. He noted, as she also testified, that this accident had a profound effect on her life. She was limited in her activities and would require palliative treatment for the rest of her life. The

3

Court notes there was no testimony as to a disability rating or permanency rating. Counsel solicited testimony from Dr. Franchetti that Ms. West could expect to spend a minimum of $1,000.00 every two years or so for palliative treatment of her lumbosacral injuries.

With respect to Plaintiff Royston Johnson, Dr. Franchetti noted Mr. Johnson suffered several injuries, but the most serious was a severe injury to his right ankle. The testimony of Mr. Johnson having his foot wedged under the brake pedal at the time of impact was consistent with the severe injury he received and a direct result of the accident of July 15, 2014. Dr. Franchetti stated the injury makes "biomedical sense" in its causal connection to the accident. Dr. Franchetti reviewed the medical records and bills incurred and testified that the treatment and costs were fair and reasonable. Mr. Johnson required two separate surgeries, the first in 2014 following the accident and the second in 2017. Both surgeries were causally related to the accident.

After reviewing the medical records and conducting two examinations of Mr. Johnson, Dr. Franchetti opined that Mr. Johnson was suffering status post surgery, right ankle arthroscopy consistent with his prior diagnoses. He opined that all of the injuries suffered by Mr. Johnson were causally related to the accident. Mr. Johnson testified his wrist injury incurred in this accident exacerbated a prior wrist fracture and treatment, but the wrist injury resolved post accident.

Dr. Franchetti opined that the right ankle injury to Mr. Johnson was permanent. Mr. Johnson would no longer be able to be employed as a catastrophic claims adjuster. Mr. Johnson testified he was employed as a catastrophic claims adjuster, an independent contractor, who responded to catastrophes such as hurricanes, windstorms and other events and was employed by insurance companies to supplement their own claims adjusters. In the course of his employment, Mr. Johnson would have to traverse uneven ground, climb ladders and enter spaces such as attics to assess storm damage. He testified he was no longer able to perform these duties. Mr. Johnson

4

testified he was now attempting to earn a living at rehabbing old homes and reselling them for a profit. He testified that there were activities that he was still unable to perform as a result of his ankle injury.

In closing, counsel argued that Mr. Johnson is entitled to past medical expenses of $77,000.00. Exhibit 1 supports the medical expenses of $71,138.90 as to Mr. Johnson. Counsel argued that Mr. Johnson is entitled to past lost earnings of $500,000.00 due to his inability to work as a catastrophic claims adjuster. Counsel requested an award of $600,000.00 for future lost earnings. In support of that request, counsel solicited testimony from Mr. Johnson as well as Dr. Franchetti's opinion that Plaintiff Johnson can no longer perform that work. In terms of noneconomic loss, counsel requested an award of $1,500,000.00 for pain and suffering and the permanent injury to Mr. Johnson's ankle, subject to the statutory cap in Maryland. Plaintiff Johnson also made claims for $3,700.00 for damage to personal property resulting from the accident.

As to Plaintiff West counsel asked the Court to award the medical expenses set forth in Exhibit 1 in the amount of $28,390.58. There was no claim for lost wages or future earnings. Counsel argued that Plaintiff West would need at least $1,000.00 in palliative care every two years as future medical expenses. Counsel also asked the Court to award non-economic loss of $1,000,000.00 to Plaintiff West for pain and suffering.

In any action for damages for personal injury or wrongful death in which the cause of action arises on or after October 1, 1995, an award for damages may not exceed $500,000. MD. CODE, CTS. & JUD. PROC. § 11-108. "The limitation on noneconomic damages provided . . . shall increase by $15,000 on October 1, of each year beginning on October 1, 1995. The increased amount shall apply to causes of action arising between October 1 of that year and September 30 of the following year, inclusive." *Id.* at § 11-108(b)(2)(ii). The accident occurred on July 15,

2014. The original cap would be $500,000.00 and with the annual increases of $15,000.00 for eighteen years, the total cap on non-economic damages would be $770,000.00.

Plaintiff Johnson testified that he would have worked at least two or three catastrophic events from the time of the accident until the present. During those events he would have made between $100,000.00 to $200,000.00 per event. Plaintiff Johnson was basing the events on the history of at least one major hurricane or catastrophic event every 2 years. Although the Court does have this testimony, there is no other support offered that would convince the Court that a major event requiring catastrophic insurance adjusters occurs every 2 years. I find that testimony to be speculative. In addition, Plaintiff Johnson provided a W-2 record for 2005 and a 1099 form for 2006 (not a W-2) along with records called "Master List" which allegedly shows his employment compensation for adjusting claims for 2004—2005. Johnson also included schedules for compensation of adjusters without any relationship to him. There are no current records showing any compensation to support his claim for lost wages or future lost wages. The records fail to support his ability to work or work performed as a catastrophic claims adjuster since 2006, giving Johnson the benefit of the doubt that this 1099 was for work as an adjuster. Therefore, I cannot recommend compensation for lost wages as a catastrophic claims adjuster. Likewise, absent some factual basis of employment on or about 2014, I cannot recommend compensation for future lost wages where Plaintiff has not provided records of employment as a catastrophic claims adjuster since 2006.

Turning to the issue of future medical expenses to be incurred by Plaintiff West, counsel solicited testimony from Dr. Franchetti. Dr. Franchetti testified that West would need care that would cost at least $1,000.00 every two years or so for the rest of her life. While that testimony is not contradicted, I find it to be too speculative to form a basis for compensation. There was no further data or other information provided to support a claim for recurring future expenses. There was no explanation offered by West to detail what kind of medical care would be needed or any

empirical data to support her claim. For that reason, I find that there is insufficient evidence to grant an award for future medical care as to Plaintiff West.

With respect to the issue of permanency of both Plaintiffs' injuries, Dr. Franchetti testified that the ankle injury sustained by Mr. Johnson was permanent. Dr. Franchetti testified that the lumbosacral strain suffered by Ms. West was permanent. There was no testimony or evidence presented to suggest a rating of permanency or disability. The Court credits the testimony of Dr. Franchetti as to the permanency of injuries and considers this testimony in the granting of non-economic damages.

After hearing the testimony of the witnesses and examining the exhibits in support of the hearing on damages, I recommend the Court adopt the following award of damages:

Royston Johnson

1. Medical expenses in the amount of $71,138.90. (Request for $77,000.00 was not supported by the records and not testified to as fair and reasonable by Dr. Franchetti);

2. Award of $3,700.00 for damaged property (testified to by Plaintiff Johnson);

3. Award of $350,000.00 for non-economic damages (based upon medical records and testimony of Plaintiff Johnson and Dr. Franchetti).

Jennifer West

1. Medical expenses in the amount of $28,390.58 (Supported by testimony of Dr. Franchetti as fair and reasonable);

2. Award of $250,000.00 for non-economic damages (based upon medical records and testimony of Plaintiff West and Dr. Franchetti).

July  29,  2020                    _____/s/_____
                                   A. David Copperthite
                                   United States Magistrate Judge